RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK

DATE __4_/__1_/_13_

a

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **WILLARD BRANDENBURG** | **DOCKET NO. 13-CV-2288; SEC. P** |
| **VERSUS** | **JUDGE DEE D. DRELL** |
| **CORRECTIONS CORPORATION OF AMERICA, ET AL.** | **MAGISTRATE JUDGE JAMES D. KIRK** |

## REPORT AND RECOMMENDATION

*Pro se* Plaintiff Willard Brandenburg filed the instant civil rights complaint in forma pauperis and pursuant to 42 U.S.C. §1983. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (LDOC), and he is incarcerated at Allen Correctional Center in Kinder, Louisiana.  Brandenburg complains that he was denied timely and adequate medical care at Winn Correctional Center (WNC).  He names as defendants Corrections Corporation of America, Tim Keith, Nicole Walker, Pat Thomas, Cathy Richardson, and Nurses Self, Smith, Adkins, Tucker, and Hancock.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.

### *Factual Allegations*

Brandenburg alleges that, on April 15, 2012, he reported for a medical callout.  Because the nurse did not allow Plaintiff to "do an Accu-Check" of his blood sugar, Plaintiff had an argument with Cathy Richardson.  He was ordered to leave the infirmary, and it was noted that he had refused care.  [Doc. #1, p.10]  On May 17,

2013, Plaintiff's prescription for Metformin (glucophage) expired or was discontinued. Nurse Smith informed Plaintiff on May 18, 2012, that Richardson had discontinued Plaintiff's medication at Brandenburg's request. Plaintiff states that he submitted a sick call request form asking that his medications be reinstated.

Five days later, on Mary 23, 2012, Plaintiff spoke with Nurse Smith about his sick call request, and the nurse said that Plaintiff would be put on the list for sick-call. [Doc. #1, p.12] Approximately one week later, Plaintiff spoke with Nurse Adkins about his diabetes medication, and he also requested ibuprofen. The nurse said that Richardson instructed them not to give Plaintiff any medication, even ibuprofen. [Doc. #1, p.12] He alleges that he has since submitted several sick-call requests without receiving any response.

Plaintiff began to experience severe headaches as well as nose bleeds. He spoke with Defendant Tucker about his situation, and Tucker said that she would leave a note for the doctor to review Plaintiff's chart. On June 18, 2012, Plaintiff asked Smith about his medication again, and Smith instructed him to fill out another sick-call request. [Doc. #1, p.13] Approximately one month later, he saw Defendant Warren and she instructed him to fill out another sick-call request also.

Finally, on August 12, 2012, Plaintiff was sent to the infirmary where his blood sugar was checked. Because his sugar was very high, he was administered 12 units of insulin and had to wait

until his blood sugar levels went down.   Plaintiff states that Defendant Hancock came into the room "arguing about something or another that I had did that was wrong."   When Plaintiff tried to explain, Hancock "refused to listen" and placed the blame on Plaintiff.

The next morning, when Plaintiff reported to medicine call-out, there was no insulin for him.   He did not receive insulin until later in the day.   That evening, because his sugar was still high, Plaintiff had to be taken to the infirmary for more insulin. [Doc. #1, p.17]   Eventually, although Plaintiff's sugar was still high, Nurse Self told Plaintiff that he could not give Plaintiff any more insulin.   He instructed Plaintiff to move around and drink water, and sent him back to the dorm.

According to one of Petitioner's exhibits, his prescriptions were renewed by August 25, 2013.   [Doc. #1-1, p.8]

### *Law and Analysis*

Plaintiff argues that his life was in danger due to the denial of medication for diabetes and/or delay in providing him with insulin.   The right to adequate medical care while incarcerated is clearly established under the Eighth Amendment to the United States Constitution.   See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To establish a constitutional violation based on the denial of medical care, a plaintiff must show that officials acted with deliberate indifference such as to cause the "unnecessary or wanton infliction of pain[.]"   Id.   This, in turn, requires proof that

defendants were subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk. See Hare v. City of Corinth, 1A F.3d 633, 648 (5th Cir. 1996), citing Farmer v. Brennan, 511 U.S. 825, 847 (1994). "Deliberate indifference is an extremely high standard to meet." See Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

Delay in providing medical care does not rise to the level of a constitutional violation unless the delay results in substantial harm. See Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Nor does an incorrect diagnosis or a disagreement with medical treatment constitute deliberate indifference. See, e.g. Domino, 239 F.3d at 756; Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). Rather, a plaintiff must show that defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Stated differently, a plaintiff must plead and prove a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs[,]" Bienvenu v. Beauregard Parish Police Jury, 705 F.2d 1457, 1460 (5th Cir. 1983), and that defendants knew of and disregarded "an excessive risk to inmate health or safety," Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999), cert. denied, 528 U.S. 906 (1999), quoting Farmer, 511 U.S. at 837.

Plaintiff claims that every time he complained, the defendant(s) instructed him to submit a sick call request. Although Plaintiff alleges that he submitted numerous sick calls, the exhibits he submitted belie this claim. Plaintiff provides a copy of a single sick call request from May 2012, showing that he was seen on May 23, 2012. [Doc. #1-1. [p.4]  The other eight "requests" to which he refers are actually "Inmate Request Forms," which are **not** the same as sick call requests, as evidenced by the exhibits. [Compare Doc. #1-1, p.4 with Doc. #1-1, p.8-12] Therefore, it appears from his own exhibits that, at least on these eight occasions - May 31, 2012, June 9, 2012, June 16, 2012, July 7, 2012, and four on July 15, 2012 - Plaintiff did *not* actually submit requests for medical care. In fact, Plaintiff recognizes in one "Inmate Request Form" to the Assistant Warden dated 7/15/12, that he had submitted numerous "requests," but only one sick call: "I've already done a sick call and numerous requests...." [Doc. #1-1, p.8]  Additionally, in response to one of the "Inmate Requests," it is noted, **"No sick calls since May** - only one seen in chart." [Doc. #1-1, p.9.]  This response accurately reflects the exhibits submitted by Plaintiff. The next time Plaintiff submitted a sick-call was in August 2012, when he made an emergency sick-call.  He received medical care that day, and his medications were renewed.  Therefore, it appears from his complaint and exhibits that Plaintiff did receive medical care on the two occasions on which he properly requested it.

Plaintiff clearly disagreed with the medical decision made in May 2012, but he chose to send inmate request forms complaining about the decision instead of making another sick-call during the months of June and July 2012.  Even if he had been submitting sick-calls and still experienced a two to three month delay in obtaining medications, his claim would still fail because he suffered no substantial harm.  Delay in providing medical care does not rise to the level of a constitutional violation unless the delay results in substantial harm.  See Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993).  Plaintiff states that he was "at risk for serious and permanent and deadly conditions" due to the alleged delay, but he does not allege that he actually suffered any of those serious, permanent, or deadly conditions.

### Conclusion

For the forgoing reasons, **IT IS RECOMMENDED** that Plaintiff's civil rights complaint be **DENIED AND DISMISSED WITH PREJUDICE** for failing to state a claim for which relief can be granted under 28 U.S.C. §1915(e)(2)(B).

### Objections

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court.  No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed.  Providing a courtesy copy of the objection to the

magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.

THUS DONE AND SIGNED at Alexandria, Louisiana, this 1st day of November, 2013.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE